## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **KENNETH AND ELIZABETH DREW,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. CV-13-S-629-NE** |
| ) | |
| **QUEST DIAGNOSTICS and AEROTEK, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Kenneth and Elizabeth Drew, assert claims against Quest Diagnostics ("Quest"), and Aerotek, Inc. ("Aerotek"), for:  (1) negligence and/or wantonness (Count One); (2) negligent and/or wanton supervision or training (Count Two); (3) negligent and/or wanton retention (Count Three); (4) negligent and/or wanton hiring (Count Four); (5) medical negligence and/or wantonness (Count Five); (6) combined and concurring negligence and/or wantonness (Count Six); (7) outrage (Count Seven); (8) *prima facie* and/or *per se* negligent and/or wanton conduct in violation of Alabama Code § 8-19-5 (Count Eight); (9) invasion of privacy – wrongful intrusion (Count Nine); (10) defamation – libel and slander (Count Ten); and (11) *res ipsa loquitur* (Count Eleven).[1]  Federal jurisdiction is based upon the diversity statute, 28 U.S.C.

---

[1] Doc. no. 15 (First Amended Complaint).

§ 1332.[2]

The case currently is before the court on the following motions:  (1) Aerotek's motion to dismiss all of plaintiffs' claims except Count Five;[3] (2) Quest's motion for judgment on the pleadings, and motion to strike various counts of plaintiffs' First Amended Complaint;[4] and (3) plaintiffs' motion to strike facts not in the pleadings from the court's consideration of Quest's motion for judgment on the pleadings.[5] Upon consideration of the motions, pleadings, and briefs, the court concludes that: Aerotek's motion to dismiss should be granted in part and denied in part; Quest's motion for judgment on the pleadings should be granted in part and denied in part; Quest's alternative motion to strike should be denied; and plaintiffs' motion to strike should be denied as moot.

## I. STANDARDS OF REVIEW

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be

---

[2] *Id.* ¶ 5 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties are completely diverse and the amount in controversy exceeds the minimum required under § 1332.").  Neither defendant challenges subject matter jurisdiction, and upon review of plaintiffs' Amended Complaint, the court concludes that the requirements of the diversity statute have been satisfied.

[3] Doc. no. 22.

[4] Doc. no. 26.

[5] Doc. no. 30.

granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.

> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a

motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis added).

## B.     Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

"Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Horsley v. Feldt*,

304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty National Life Insurance Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (internal marks omitted)). Stated differently, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996) (alteration supplied). When reviewing such a motion, the court is required to accept the facts alleged in the complaint as true, and to view them in the light most favorable to the nonmoving party. *Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978).[6]

## C.     Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

> "A motion to strike is a drastic remedy[,]" which is disfavored by the courts and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *Poston v. American President Lines Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978). Further, when deciding a motion to strike, a court must accept the truthfulness of well-pleaded facts and "cannot consider matters beyond the pleadings." *Carlson Corp./Southeast v. School Board Of Seminole County, Fla.*, 778 F. Supp. 518 (M.D. Fla. 1991); *See also: U.S. Oil Co., Inc. v. Koch Refining Co.*, 518 F. Supp.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

957, 959 (E.D. Wis. 1981).

*Thompson v. Kindred Nursing Centers East, LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (alteration in original).

## II. ALLEGATIONS OF PLAINTIFFS' AMENDED COMPLAINT[7]

Defendant Quest is a diagnostics laboratory that conducts testing for various blood diseases.[8]  Defendant Aerotek is a staffing agency involved in the staffing of employees working at Quest's Huntsville, Alabama location.[9]

On October 26, 2011, a blood sample was drawn from plaintiff Kenneth Drew at Quests's Huntsville, Alabama laboratory as part of a routine physical examination for his military employer.[10]  During the testing process, Mr. Drew's blood sample either was not labeled at all, or was improperly labeled, by a technician employed by Aerotek and working at Quest's Huntsville location.[11]  Mr. Drew inquired as to why his sample had not been labeled, and he was told by the technician that it would be done later.[12]

Mr. Drew's test results were sent to his primary care physician in Lawrenceville,

---

[7] All allegations of plaintiffs' Amended Complaint have been accepted as true for purposes of ruling on the pending motions.

[8] Amended Complaint ¶ 7.

[9] *Id.* ¶ 8.

[10] *Id.* ¶ 9.

[11] *Id.* ¶¶ 4, 10.

[12] *Id.* ¶ 11.

Georgia.  That physician notified Mr. Drew on October 31, 2011, that he had tested positive for both the herpes virus and the HIV virus.[13]  Mr. Drew was required to inform his military employer of those results, and the results also were reported to the United States Centers for Disease Control and Prevention.[14]  The results, however, were false.[15]

As a result of defendants' negligent and/or wanton handling of Mr. Drew's blood test, Mr. Drew's marriage to plaintiff Elizabeth Drew suffered.[16]  Both Mr. and Mrs. Drew also suffered extreme emotional distress, mental anguish, and embarrassment, and they were required to miss time from work and to attend medical appointments.[17]

## III. DISCUSSION

### A.    The Alabama Medical Liability Act

Both Quest and Aerotek argue that some of the plaintiffs' claims are precluded by the Alabama Medical Liability Act ("the AMLA").  Aerotek asserts that all claims

---

[13] *Id.* ¶¶ 12-13.

[14] Amended Complaint ¶ 14.

[15] Plaintiffs did not actually state in the fact section of the Amended Complaint that the test results were false.  Thus, the court was forced to scour the eleven counts of the Amended Complaint to actually find a statement to that effect.  As part of their defamation claim, plaintiffs state that defendants "communicated with Plaintiff Kenneth Drew's medical providers that he had HIV and Herpes," and that "[t]he statements by the Defendants were false."  *Id.* ¶¶ 60-61 (alteration supplied).

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 16.

except Count Five are precluded.[18]  Quest, on the other hand, limits its argument to plaintiffs' negligence and/or wantonness claims, including Counts One (negligence/wantonness), Two (negligent/wanton supervision or training), Three (negligent/wanton retention), Four (negligent/wanton training), Six (combined and concurring negligence/wantonness), and Eleven (*res ipsa loquitur*).[19]

The relevant provision of the AMLA states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action.

Ala. Code § 6-5-551.  Neither defendant appears to dispute that it could be considered a "health care provider" for purposes of the AMLA.  *See Anderson v. Alabama Reference Laboratories*, 778 So.2d 806, 809-10 (Ala. 2000) (holding that a laboratory that performed tuberculosis testing on a sputum sample was subject to the AMLA).

Instead, the parties' dispute centers on whether the AMLA is the *exclusive* remedy for claims resulting from a health care provider's breach of the standard of care.  Defendants argue that a plaintiff asserting a claim "for injury, damages, or wrongful death, whether in contract or tort, against a health care provider" is allowed

---

[18] *See* doc. no. 22 (Aerotek, Inc.'s Motion to Dismiss Plaintiffs' Complaint).

[19] *See* doc. no. 26 (Defendant Quest Diagnostics Clinical Laboratories, Inc.'s Motion for Judgment on the Pleadings and Motion to Strike), at 8-9.

only a single cause of action under the AMLA, and that no independent causes of action for negligence, or any other claims that might be covered by the AMLA, may be asserted.  In other words, defendants argue that the AMLA subsumes, or preempts, all other causes of action.[20]  Plaintiffs, on the other hand, maintain that, by asserting a claim for violation of the AMLA (Count Five), they "are not barred from asserting additional causes of action."[21]

The court agrees with plaintiffs.  In *Collins v. Ashurst*, 821 So. 2d 173 (Ala. 2001), the plaintiff sued her physician and his practice group for removing the wrong ovary.  *Id.* at 174.  Her complaint asserted three causes of action: "Count I, entitled 'Medical Malpractice'; Count II, entitled 'Assault and/or Battery'; and Count III, entitled 'Trespass to Person.'"  *Id.*   The trial court dismissed Counts II and III, reasoning that "'the Medical Liability Act governs all actions against physicians and as such a plaintiff may state a claim for medical malpractice only and no other."  *Id.* (quoting the trial court's opinion).  The Alabama Supreme Court reversed that decision on appeal, stating:

---

[20] *See, e.g.,* doc. no. 26 (Defendant Quest Diagnostics Clinical Laboratories, Inc.'s Motion for Judgment on the Pleadings and Motion to Strike) at 9 ("Because the conduct at issue may give rise only to claims subject to the Alabama Medical Liability Act ("AMLA"), Plaintiffs' remaining negligence and wantonness claims are superfluous and will lead to confusion regarding the issues relevant to this case.") (citing *Mock v. Allen,* 783 So. 2d 828, 832 (Ala. 2000)).

[21] Doc. no. 25 (Plaintiffs' Response in Opposition to Defendant Aerotek, Inc.'s Motion to Dismiss Plaintiffs' Complaint), at 3.

At the outset, we note that the AMLA recognizes the possibility that more than one type of action may be brought under that act.  Specifically, the definitions section, § 6–5–542, which the trial court interpreted to allow only one cause of action, *i.e.*, medical malpractice, states, in pertinent part, that "[t]his definition [for 'standard of care'] applies to *all actions* for injuries or damages or wrongful death *whether in contract or tort* and *whether based on intentional or unintentional conduct*." (Emphasis added.)  Thus, the AMLA envisions both tort claims and contract claims, based on either intentional or unintentional conduct.  This particular section provides the applicable standard of care that governs all actions against the health-care providers specified in the act; it does not contain language that would lead to the conclusion that the only available cause of action, in contract or in tort, is medical malpractice.  We note further that other sections of the AMLA also recognize that more than one type of action for medical malpractice may be brought.

*Collins*, 821 So.2d at 176 (alterations and emphasis in original) (footnote omitted).[22]

The court held, "based upon the clear language of the AMLA, . . . that the trial court erred in determining that the AMLA allows for only one cause of action, and, consequently, in striking [the plaintiff's] counts for assault and battery and trespass." *Id.* at 177 (alterations supplied).  The United States District Court for the Middle

---

[22] The omitted footnote stated:

Upon a review of the AMLA, we find that the act, as first written in 1975, § 6–5–540 *et seq*., contemplated the maintenance of more than one type of action by referring to actions "based on contract or tort" in § 6–5–482(a).  The 1987 supplemental statutes, in addition to the statute considered by the trial court, continued to recognize more than one cause of action in §§ 6–5–543, –544, –546, –547, –548, –549, –550 (creating an additional cause of action for malicious prosecution), and –551.  The AMLA contains no section similar to that found in § 6–5–573, a part of the Alabama Legal Services Liability Act, which creates "only one form and cause of action . . . known as the legal services liability action."

*Collins*, 821 So.2d at 176 n.1.

District of Alabama, following the Alabama Supreme Court's decision in *Collins*, has also denied a motion to dismiss a breach of contract claim, because "[t]he contract claim may be asserted under the AMLA." *M.D.P. v. Houston County Health Care Authority*, 821 F. Supp. 2d 1295, 1301-02 (M.D. Ala. 2011) (alteration supplied).

Based on this authority, the court concludes that the AMLA was not intended to pre-empt all other claims. Accordingly, none of plaintiffs' claims will be dismissed or stricken due to the exclusivity of the AMLA. That does not mean, however, that the parties can avoid the AMLA altogether. Even though plaintiffs' non-AMLA claims will not be dismissed or stricken, they nonetheless are subject to the additional pleading and discovery requirements of the AMLA.[23]

## B.    Outrage (Count Seven)

To support their claim for outrage (Count Seven), plaintiffs state:

47.    Defendants' willful, wanton, reckless, intentional, and otherwise wrongful acts and omissions described herein caused the

---

[23] Under the AMLA,

[t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . .  Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551 (alteration supplied).  Additionally, "[a]ny party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission." *Id.* (alteration supplied).

-11-

Plaintiffs to live in fear and distress while believing that Plaintiff Kenneth Drew was HIV positive and was positive for the herpes virus.

    48.   The actions and/or inactions of the Defendants constitute extreme and outrageous conduct so atrocious in character and extreme in degree as to be outside the common bounds of decency and utterly intolerable in a civilized society.

    49.   As a proximate result of this extreme and outrageous conduct, the Plaintiffs have suffered and will continue to suffer traumatic loss, injuries, and damages, including but not limited to, mental anguish, pain and suffering, and emotional distress.[24]

Quest argues that plaintiffs' outrage claim should be dismissed because Alabama law does not provide a cause of action for outrage based on mishandling of a blood test and inaccurate reporting of test results.[25]  The court agrees with Quest.

To establish a claim, regardless of whether it is characterized by a plaintiff as either a tort of "outrage," or as an action for the intentional infliction of emotional distress,[26] the plaintiff must demonstrate:  "(1) that the defendants either intended to

---

[24] Amended Complaint ¶¶ 47-49.

[25] Only Quest asserted this argument, but the holding will apply to the claims asserted against *both* defendants.

[26] Under Alabama law, the so-called "tort of outrage" and an action for the intentional infliction of emotional distress are conceptually deemed to be synonymous. *See, e.g., Ex Parte Lumbermen's Underwriting Alliance,* 662 So. 2d 1133, 1134 (Ala. 1995) (recognizing that intentional infliction of emotional distress is "otherwise known as the tort of outrage"); *Sanders v. Shoe Show, Inc.,* 778 So. 2d 820, 823 (Ala. Civ. App. 2000) (same); *see also Sphere Drake Ins., P.L.C. v. Shoney's, Inc.,* 923 F. Supp. 1481, 1491 (M.D. Ala. 1996) (stating that, under Alabama law, the tort of outrage and the intentional infliction of emotional distress are "the same cause of action").  This court believes that, as a matter of policy, the torts of outrage and intentional infliction of emotional distress should be viewed as conceptually distinct.  However, since the Alabama courts have failed to recognize this distinction, this court will analyze the two counts as if they were a single cause of action.

inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Callens v. Jefferson County Nursing Home,* 769 So. 2d 273, 281 (Ala. 2000) (citing *Jackson v. Alabama Power Co.,* 630 So. 2d 439 (Ala. 1993), and *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980)).

Furthermore, the Alabama Supreme Court recognizes the tort only in "egregious circumstances" and, as of the year 2000, had limited its application to: wrongful conduct within the context of family burials; an insurance agent's coercing an insured into settling an insurance claim; and egregious sexual harassment. *Callens,* 769 So. 2d at 281 (citing *Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041 (Ala. 1993)). More recently, in 2011, the Alabama Supreme Court also allowed an outrage claim when a family physician engaged in a homosexual relationship with a minor patient, and, provided narcotic medication to the minor despite indications that he was developing addictive tendencies. *O'Rear v. B.H.*, 69 So. 3d 106, 118-19 (Ala. 2011).

Defendants' alleged actions (or inactions) in this case do not fall within any of the categories for which the Alabama Supreme Court previously has allowed an outrage action, and they are not sufficiently extreme or outrageous to warrant

recognizing the tort in an entirely new context.  Plaintiffs cite cases from other jurisdictions that have recognized the tort of outrage based on the *intentional* fabrication of an HIV-positive diagnosis,[27] but none that recognize the tort in the context of a *negligent*, or even *wanton*, misdiagnosis.  Accordingly, judgment on the pleadings will be entered in favor of defendants on plaintiffs' outrage claim (Count Seven).

## C.    Negligence *Per Se* (Count Eight)

To support their claim for "*Prima Facie* and/or *Per Se* Negligent and/or Wanton Conduct," plaintiffs allege:

> 51.  At the aforementioned time and place and for some time prior thereto, Defendants improperly handled, labeled and/or tested Plaintiff Kenneth Drew's blood sample.  In addition, Defendants improperly

---

[27] *See Poveromo-Spring v. Exxon Corp.*, 968 F. Supp. 219, 228 (D. N.J. 1997); *Harvey v Cramer*, 235 A.D.2d 315, 316 (N.Y. App. Div. 1997); *Whelan v. Whelan*, 588 A.2d 251, 252-53 (Conn. Super. 1991).  Despite not being on point, the *Poveromo-Spring* case does not even say what plaintiffs claim it says.  In that case, the defendants sought dismissal of an intentional infliction of emotional distress claim based on the intentional disclosure of an incorrect AIDS diagnosis on the grounds that such conduct "falls short of the kind of 'extreme' and 'outrageous' conduct that must be present to support such a claim."  *Poveromo-Spring*, 968 F. Supp. at 228.  The United States District Court for the District of New Jersey disagreed with that assertion, but nonetheless found the facts pled by the plaintiff to support the intentional infliction of emotional distress claim were insufficient, and dismissed the claim for failure to state a claim upon which relief could be granted *Id.*  The quote plaintiffs attribute to the district court — "Intentional disclosure of incorrect Acquired Immune Deficiency Syndrome (AIDS) diagnosis could be kind of extreme and outrageous conduct necessary to support claim for intentional infliction of emotional distress" — does not appear anywhere in the *Poveromo-Spring* decision.  *See* doc. no. 27 (Plaintiffs' Response in Opposition to Defendant Quest Diagnostics's Motion for Judgment on the Pleadings and Motion to Strike), at 6.  Instead, the quote is straight from the headnotes to the decision.  *See Poveromo-Spring*, 968 F. Supp. 219, at Headnote 11.  Plaintiffs' counsel should know better than to quote from a headnote, and he is strongly cautioned to avoid such a mistake in the future.

distributed untrue information concerning Kenneth Drew in violation of Alabama law and negligently and/or wantonly caused injury to the Plaintiffs.

52.  As a result of this conduct, Defendants violated the Alabama Code (e.g., Ala. Code 1975, § 8-19-5(5)&(7))[ the Alabama Deceptive Trade Practices Act].[28]

53.  Said conduct was the proximate cause of the Plaintiffs' injuries and damages, and is *prima facie* and/or *per se* negligence.[29]

Quest argues that plaintiffs' negligence claim cannot be based upon the Alabama Deceptive Trade Practices Act,[30] and plaintiffs concede the dismissal of that claim, except they desire to retain paragraph 51, and have it renumbered to serve as one of the

---

[28] The cited provisions of the Alabama Deceptive Trade Practices Act state:

The following deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:

. . . .

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

. . . .

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Ala. Code § 8-19-5(5)&(7).

[29] Amended Complaint ¶¶ 51-53 (alteration supplied).

[30] *See* doc. no. 26 (Defendant Quest Diagnostics Clinical Laboratories, Inc.'s Motion for Judgment on the Pleadings and Motion to Strike), at 6-7.  Again, only Quest asserted this argument, but the holding will apply to the claims asserted against *both* defendants.

factual allegations in an earlier section of the Amended Complaint.[31]  Quest did not

object to that proposal,[32] and it will be accepted by the court.  Count Eight will be

dismissed, and the statements contained in paragraph 51 will be considered as part of

plaintiffs' factual allegations.[33]

## D.    Invasion of Privacy (Count Nine)

Alabama has long recognized that a wrongful intrusion into one's private activities constitutes the tort of invasion of privacy.  *See I.C.U. Investigations, Inc. v. Jones*, 780 So. 2d [685, 688 (Ala. 2000)]; *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997); *Smith v. Doss*, 251 Ala. 250, 37 So. 2d 118 (1948).  "'This Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'"  *Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 737 (Ala. 2001) (quoting *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995)).

"It is generally accepted that invasion of privacy consists of four limited and distinct wrongs:  (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality

---

[31] *See* doc. no. 27 (Plaintiffs' Response in Opposition to Defendant Quest Diagnostics's Motion for Judgment on the Pleadings and Motion to Strike), at 8 ("Plaintiffs respectfully request that the Court dismiss Count Eight, with the exception of paragraph 51, which the Plaintiffs respectfully request be renumbered as paragraph 16(a).").

[32] *See* doc. no. 28 (Defendant Quest Diagnostics Clinical Laboratories, Inc.'s Reply to Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings), at 4-6 (discussing the merits of plaintiffs' claim under the Alabama Deceptive Trade Practices Act, but neglecting to mention plaintiffs' proposal to dismiss Count Eight).

[33] However, no actual, physical renumbering of the paragraphs of the Amended Complaint will be necessary.

for recovery, *271 Ala. 74, 132 So.2d* 321 (1961)."

*Johnston*, 706 So.2d at 701.

*Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003) (alteration supplied).

To support their invasion of privacy claim, plaintiffs allege that defendants "committed a wrongful intrusion upon the Plaintiffs' solitude or seclusion by improperly disclosing untrue and incorrect health information, namely Kenneth Drew's HIV status and Herpes status."[34]  They also allege that any reasonable person subjected to such a disclosure "would experience outrage, mental suffering, shame, or humiliation."[35]  Moreover,

> [d]efendants['] wrongful intrusion was intentional:
>
> i.   By design in their laboratory testing policies/procedures;
>
> ii.  By design through their policies/procedures concerning the distribution of test results;
>
> iii. By design through their policies/procedures in handling human testing samples;
>
> iv.  By design through their policies/procedures concerning the labeling of blood samples;
>
> v.   By design in their policies/procedures/practices concerning the hiring, supervision and/or retention of labor or human capital; and

---

[34] Amended Complaint ¶ 55.

[35] *Id.* ¶ 56.

vi.     By design in their training of labor or human capital.[36]

Quest argues that the invasion of privacy claim should be dismissed because Mr. Drew voluntarily subjected himself to the blood test as part of a routine employment physical.[37]  Plaintiffs do not dispute that the invasion of privacy claim cannot be based upon the act of drawing his blood.[38]  Instead, they assert that the claim is based upon the improper disclosure of "untrue and incorrect health information," and that is indeed what the Amended Complaint alleges.[39]  The court agrees that the invasion of privacy claim can proceed based upon the disclosure of incorrect information, but not upon the act of drawing Mr. Drew's blood.  Thus, the invasion of privacy claim will not be dismissed.

## E.     Defamation (Count Ten)

To establish a prima facie case of defamation [under Alabama law], a plaintiff must show:

"[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and

---

[36] *Id.* ¶ 57 (alterations supplied).

[37] Only Quest asserted this argument, but the holding will apply to the claims asserted against *both* defendants.

[38] Doc. no. 27 (Plaintiffs' Response in Opposition to Defendant Quest Diagnostics's Motion for Judgment on the Pleadings and Motion to Strike), at 8 ("Defendants are correct that Plaintiff Kenneth Drew voluntarily allowed his blood to be drawn.  The invasion of privacy, however, was not the drawing of blood.").

[39] Amended Complaint ¶ 55.

proof of special harm (actionable per quod)."

> *Delta Health Group, Inc. v. Stafford*, 887 So. 2d 887, 891 (Ala. 2004)
> (quoting *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala.
> 1988) (citations omitted)).

*Ex parte Crawford Broadcasting Co.*, 904 So. 2d 221, 225 (Ala. 2004) (first alteration supplied, other alterations in original).

To support their defamation claim, plaintiffs allege that "[d]efendants, both orally and in written form, communicated [falsely] with Plaintiff Kenneth Drew's medical providers that he had HIV and herpes."[40]  Moreover, defendants allegedly knew or should have known that Mr. Drew would be required to report his HIV results to his employer, and that the news of Mr. Drew's test results would adversely affect his employment.[41]

Quest argues that plaintiffs' defamation cannot proceed past the pleadings stage for four reasons.[42]

## 1.    False and defamatory statement

First, Quest asserts that plaintiffs have failed to allege the public communication of a *false* and defamatory statement, as is required for a defamation claim.  *See, e.g., Ex parte Crawford Broadcasting Co.,* 904 So. 2d at 225.   According to Quest,

---

[40] Amended Complaint ¶ 59 (alterations supplied).  *See also id.* ¶ 60.

[41] *Id.* ¶¶ 62-63.

[42] Only Quest asserted these arguments, but the holding will apply to the claims asserted against *both* defendants.

plaintiffs have not alleged that defendants *misrepresented* Mr. Drew's test results to his treating physician; instead, plaintiffs are only complaining that defendants "correctly communicated incorrect test results."[43]  The court finds the distinction between the inaccuracy of the test results and the inaccuracy of defendants' *communication* of those results too fine — indeed, disingenuous and too cute — to warrant dismissal of the claim based on the pleadings alone.  Discovery should be permitted regarding the exact nature of the communications made regarding Mr. Drew's test results.

### 2.    Qualified privilege and actual malice

Quest also asserts that the defamation claim must fail due to plaintiffs' failure to allege actual malice.  According to Quest, any communications between Quest and Mr. Drew's physician were subject to a "qualified privilege," and "'[s]tatements made subject to a qualified privilege are not actionable unless the plaintiff can prove that the defendant acted with [actual] malice.'" *Wiggins v. Mallard*, 905 So.2d 776, 782 (Ala. 2004) (quoting *Atkins Ford Sales, Inc. v. Royster*, 560 So.2d 197, 200 (Ala.1990)) (first alteration supplied, second alteration in *Wiggins*).[44]  Though Quest did not bother to explain what the qualified privilege is, or why the communications at issue are subject

---

[43] Doc. no. 26 (Defendant Quest Diagnostics Clinical Laboratories, Inc.'s Motion for Judgment on the Pleadings and Motion to Strike), at 5.

[44] *See id.*

to such a privilege, the Alabama Supreme Court has described the qualified privilege

as follows:

> "'[N]otwithstanding the tendency of the words to defame or disparage the plaintiff, they were . . . spoken or published . . . in the . . . discharge of some legal or moral duty to society, or even in the fair and honest prosecution of the rights of the party himself, or the protection of his interests. . . .' 2 Starkie Ev. 863."

*Easley v. Moss*, 9 Ala. 266, 268 (1846).

> "'Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged. . . . The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is . . . moral in its nature. . . .'"

[other citations omitted]

> "Where the defendant acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform, the law simply . . . gives protection to the defendant. . . ."

APJI 23.12 (2d ed.1993).

*Ex parte Blue Cross and Blue Shield of Alabama*, 773 So. 2d 475, 478-79 (Ala. 2000)

(first alteration in original, second alteration supplied).

Plaintiffs do not appear to dispute that the communications at issue are subject

to the qualified privilege, and the court concludes that communications between a

blood testing laboratory and a physician's office do indeed fall under the parameters of the privilege.  Plaintiffs also do not dispute that they failed to allege actual malice, and the court's review of the Amended Complaint does not reveal any allegations of malice.  Even so, plaintiffs maintain that their failure to plead actual malice can be overlooked because Quest did not properly raise the privilege as a defense.  Indeed, the Alabama Supreme Court characterized the qualified privilege is an affirmative defense, *see Ex parte Blue Cross and Blue Shield of Alabama*, 773 So. 2d at 478-79, and Quest neglected to plead that defense in its answer.[45]  Therefore, Quest now is barred from raising that defense, *see* Fed. R. Civ. P. 8(c), and it is irrelevant that plaintiffs failed to plead actual malice.[46]

### 3.    Publication to Mr. Drew's physician

Next, Quest argues that "the communication of the blood test results to Plaintiff Kenneth Drew's treating physician were, in effect, statements made to plaintiff and, therefore, will not support a claim for defamation."[47]  The only authority Quest cites for this argument is the Alabama Supreme Court's decision in *Reece v. Finch*, 562

---

[45] *See* doc. no. 16 (Quest's Answer to Plaintiffs' First Amended Complaint).

[46] Of course, this ruling does not mean that plaintiffs will be permitted to later argue that defendants acted with actual malice.  Plaintiffs' failure to plead that theory in their Amended Complaint will bar their future litigation of that theory.  Instead, the court's ruling is simply that, because defendants did not properly raise the affirmative defense of qualified privilege, plaintiffs' defamation claim is not limited to false and defamatory statements made with actual malice.

[47] Doc. no. 26 (Defendant Quest Diagnostics Clinical Laboratories, Inc.'s Motion for Judgment on the Pleadings and Motion to Strike), at 6.

So.2d 195 (Ala. 1990).  There, a physician asserted a defamation claim against several

other physicians, all of whom made negative statements about him while responding

to inquiries from an insurance company that was deciding whether to provide medical

liability coverage to the plaintiff.  *Id.* at 196-97.  The plaintiff had executed a release

stating, among other things, that any other physicians with information bearing on the

issue of the plaintiff's insurability were allowed to provide it.  *Id.* at 197-98.  The

Alabama Supreme Court affirmed the trial court's order granting summary judgment

for the defendants, stating:

> The legal effect of Dr. Reece's execution of the general release, coupled with his applications for insurance coverage, was to appoint [the insurance company's] employee as his agent for the limited purpose of seeking information from other physicians concerning such coverage. Not only did Dr. Reece contemplate contact between [the insurance company's] employee and other members of the medical profession, but he expressly authorized the solicitation of information from his fellow doctors pertinent to his application for malpractice insurance.

> Our cases have held that statements made to one's agent, which are both authorized and invited by the principal, are not deemed to have been "published"; and without "publication" there can be no defamation. *McDaniel v. Crescent Motors, Inc.*, 249 Ala. 330, 31 So.2d 343 (1947); *see also Dixon v. Economy Co.*, 477 So.2d 353 (Ala. 1985); and *Mims v. Metropolitan Life Ins. Co.*, 200 F.2d 800 (5th Cir. 1952).

> The rationale for this rule is this:  Because the requisite element of publication is not met if the allegedly defamatory words (whether written or oral) are made only to the complaining party, *such words are not published when made to one who stands in an agency relationship with the complaining party*, if the agent represents the principal in the matter discussed and invited by the principal.  Stated otherwise, statements made

> to an agent, under these circumstances, are the legal equivalent of statements made directly to the principal; thus, there is no publication, and without publication there can be no actionable claim for defamation.

*Reece*, 562 So. 2d at 198 (alterations and emphasis supplied).

The court strains to understand how Mr. Drew's physician could be considered his agent for these purposes, but even if he could, the determination would be a fact-based one, and thereby one that is not appropriate for resolution on a motion for judgment on the pleadings. Moreover, because the court need not consider Quest's argument at this stage, it also need not consider the factual statements objected to by plaintiffs in their motion to strike. The motion to strike consequently will be denied as moot.

### 4.   Self-publication

Finally, Quest argues that plaintiffs' defamation claim cannot be based on their allegation that Mr. Drew was required to report his HIV test results to his employer. On this point, the court agrees with Quest. A defamation claim requires proof that *the defendant* published the defamatory statements to a third party. *See, e.g., Ex parte Crawford Broadcasting Co.,* 904 So. 2d at 225. Here, Mr. Drew acknowledges that *he*, not Quest, was the one who reported the test results to his employer. It is of no consequence that he was *required* to do so by his employer's regulations. Accordingly, plaintiffs cannot proceed on that aspect of their defamation claim that arises from the

alleged reporting of Mr. Drew's test results to his employer.

### 5.    Summary

In summary, Quest's motion for judgment on the pleadings will be granted in part and denied in part with regard to plaintiffs' defamation claim. All aspects of plaintiffs' defamation claim arising from the alleged reporting of Mr. Drew's test results to his employer will be dismissed; all other aspects of the claim will remain pending.

### F.    *Res Ipsa Loquitur* (Count Eleven)

To support their claim for *res ipsa loquitur*, plaintiffs allege that defendants had complete control of Mr. Drew's blood sample, and, "[a]ccording to common knowledge and experience of mankind, the incident would not have happened without the Defendants' negligence."[48] Presumably, the "incident" referred to by plaintiffs is the inaccurate reporting of Mr. Drew's test results.

Aerotek argues that this claim should be dismissed because *res ipsa loquitur* "is not an independent cause of action under Alabama law."[49] Plaintiffs concede that

---

[48] Amended Complaint ¶¶ 66-67.

[49] Doc. no. 22 (Aerotek, Inc.'s Motion to Dismiss Plaintiffs' Complaint), at 4. *See Kerns v. Sealy*, 496 F. Supp. 2d 1306, 1315 n.13 (S.D. Ala. 2007) ("[R]es ipsa loquitur is not a separate tort or cause of action; rather, that doctrine is merely a procedural device that creates a rebuttable inference of negligence."). Only Aerotek asserted this argument, but the holding will apply to the claims asserted against *both* defendants.

point,[50] and, accordingly, Count Eleven will be dismissed.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, Aerotek's motion to dismiss is GRANTED in part and DENIED in part.  Quest's motion for judgment on the pleadings also is GRANTED in part and DENIED in part.  Quest's alternative motion to strike is DENIED.  Plaintiffs' motion to strike is DENIED as moot.

It is ORDERED that Counts Seven, Eight, and Eleven of plaintiffs' Amended Complaint are DISMISSED with prejudice.  All portions of Count Ten that arise from the alleged reporting of Mr. Drew's test results to his employer also are DISMISSED. All other claims shall remain pending.

DONE this 17th day of January, 2014.

_____
United States District Judge

---

[50] Doc. no. 25 (Plaintiffs' Response in Opposition to Defendant Aerotek, Inc.'s Motion to Dismiss Plaintiffs' Complaint), at 5 ("Plaintiffs' Count Eleven "Res Ipsa Loquitur" [*sic*] is due to be dismissed, since it is merely absorbed into Plaintiff's [*sic*] Count One "Negligence and/or Wantonness.") (alterations supplied).